UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:08CV80-J

DARREN WETHINGTON                                                    PLAINTIFF

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before the Court is claimant Darren Wethington's Complaint seeking judicial review of the unfavorable decision rendered by the defendant Commissioner denying his claim for Supplemental Security Income Benefits ("SSI"). After examining the administrative record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision is supported by substantial evidence and must be upheld.

## PROCEDURAL HISTORY

Plaintiff has filed multiple applications for SSI benefits. In an October 1, 2002 application, claimant alleged that he became disabled on December 31, 2000 at age 18 from problems with migraine headaches, spurs on his back, neck, and nerves (Tr. 153). In a September 14, 2004 application, he alleged that he became disabled on December 31, 2001 at age 19 from stomach problems, neck/back pain, nerve problems, mental health disorders, slow learner, poor memory/concentration and HBP (Tr. 550). While the second application was pending, the Appeals Council remanded the first application for further consideration. Following new hearings on both the first and second applications, ALJ Arnold found that the claimant has a severe impairment of bipolar disorder. However, the ALJ found that plaintiff remains capable of performing some light and medium work, stating:

>After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at any exertional level that involves only low stress work, and has a seriously limited but not precluded ability to work with the public (Tr. 35).

Plaintiff appeals from this unfavorable decision.

STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by an error of law, and to determine whether substantial evidence supports the decision of the Commissioner, 42 U.S.C. §405(g); Elam ex. Rel. Golay, v. Commissioner, 348 F.3d 124, 125 (6th Cir. 2003). Where the Commissioner's decision is supported by substantial evidence, the reviewing court must affirm, Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Kirk v. Secretary of HHS, 667 F.2d 524 (6th Cir. 1981); Jones v. Secretary of HHS, 945 F.2d 1365 (6th Cir. 1991).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight, Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the court even thought the record might support a contrary conclusion, Smith v. Secretary of HHS, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts," Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

Plaintiff argues that the ALJ committed the following errors: 1) the ALJ erred by failing to find claimant's personality disorder and borderline intellectual functioning to be "severe"

2

impairments; 2) the ALJ did not properly consider the treating source medical records from Adanta in formulating his residual functional capacity findings; and 3) the ALJ erred in his analysis of claimant's credibility and subjective complaints.

ANALYSIS

1.   <u>Claimant argues that the ALJ failed to consider his personality disorder and borderline intellectual functioning to be severe impairments at Step Two of the sequential evaluation process.</u>

The claimant's applications include both physical and mental complaints, but the issues on appeal involve only claimant's mental problems.  Plaintiff's first argument is that the ALJ failed to consider his personality disorder and borderline intellectual functioning to be "severe" impairments at Step Two of the sequential evaluation process.  In support of his argument, the claimant cites to numerous medical records as support for the existence of these conditions.  (There are also numerous records which would support average intellectual functioning Tr. 678, 699).  This Court routinely notes that the mere diagnosis of a condition says nothing about its severity, <u>Higgs v. Bowen</u>, 880 F.2d 860 (6th Cir. 1988).  Furthermore, it is not error for a particular impairment to be found non-severe so long as the effect of that condition is considered in determining whether the claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, <u>Maziarz v. Secretary of HHS</u>, 837 F.2d 240, 244 (6th Cir. 1987).  The crucial emphasis is whether the impact of any such condition (i.e. its resulting functional limitations) is considered and accounted for in subsequent steps of the sequential evaluation process.  The ALJ appears to have considered the claimant's bipolar disorder and overall mental capacities when carrying out the sequential evaluation process.  Furthermore, the claimant has failed to establish that  he suffers from

3

additional mental limitations not identified and considered by the ALJ.  The Court determines that the ALJ's findings at Step Two are supported by substantial evidence and are entitled to this Court's deference.

2.      Claimant argues that the ALJ improperly rejected the treating source opinions and records from Adanta.

The claimant's second argument is that the ALJ did not properly consider the treating source medical records from Adanta in formulating his residual functional capacity findings.  Specifically, the claimant argues that it was error for the ALJ not to rely upon the medical opinions and limitations found by Dr. Mark Hyatt, therapist Ms. Ferree, and Dr. Dennis.  This argument involves application of what is commonly known as the treating physician rule.  The courts have long held that the treating physician – especially one who has seen the patient over a period of time -- is in a unique position to evaluate the functional impact of an impairment on her or his patient, and the law recognizes the importance of that point of view by according deference to the opinions of treating physicians.  In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the court again confirmed the weight ordinarily due the opinion of a treating physician.  Wilson also underlined the fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. Section 404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician.  See also Soc.Sec.Rul. 96-2p.

A treating physician's opinion, if uncontradicted, should be given complete deference. See, e.g.,  Walker v. Secretary of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir.1992).  A treating physician's opinion is entitled to controlling weight if the Commissioner finds "that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is

4

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. S 404.1527(d)(2)(1999). In other words, the opinion of a treating physician need not be given *controlling* weight unless supported by clinical or diagnostic findings. See Walters v. Commissioner of Social Security, 127 F.3d 525, 530 (6th Cir.1997); Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir.1993); Kirk v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). However, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference," even if that opinion does not qualify for *controlling* weight. Rogers v. Commissioner of Social Security, 486 F.3d 234, 242 (6th Cir. 2007).

The records in question indicate that the claimant has been seen off and on at Adanta throughout his life, and with varying levels of compliance with medication and appointment-keeping. The ALJ discusses these records at Tr. 36, outlines all of the mental health treatment records, and explains why he chose not to give the opinions from Adanta controlling weight:

> In May 2004, his treating psychiatrist at Adanta indicated a GAF of 55 (Exhibit 16F), which indicates moderate severity. On June 23, 2004, the psychiatrist recorded that the claimant was non-compliant, and a treatment note of Carole Ferree, CSW (who also works at Adanta) from that month recorded that he had not taken his medication for 3 months (Exhibit B-5F). Ms. Ferree's last notes recorded that the claimant was cooperative, actively involved and friendly despite not having any medication for 4 months. Ms. Ferree completed statements in January 2004 and January 2005 wherein she opined that the claimant was very limited, but her opinion is rejected since she is merely a social worker and her opinion is not consistent with the preponderance of the evidence (or even here own treatment notes) during the relevant period (Exhibits 19F and B-5F). In December 2004, consultative examiner Ollie Dennis EdD concluded that the claimant was limited in his ability to deal with others and in his ability to tolerate work stress, but also concluded that the claimant had a GAF of 58 (Exhibit B-4F). Psychological consultants concluded in 2005 that the claimant could function in a setting that required little public contact, and that he was able to adapt to routine changes (Exhibits B-6F and B-10F). During a consultative examination in September 2006, he admitted that he was not taking prescribed psychotropic medications and not involved in any outpatient mental

5

health treatment (Exhibit B-13F). He also admitted that he did laundry, went grocery shopping, played video games with a friend a couple times a week, and visited his mother a couple times a week. The consultative examiner, Gary Maryman, PsyD, noted that the claimant was alert and showed no signs of any emotional distress, completed the examination process quite well, related pretty well, did not show any signs of agitation or hostility, was in a fairly unremarkable mood, conducted himself appropriately, and expressed himself reasonably well. Dr. Maryman concluded that the claimant had a GAF of 58, which signifies moderate symptoms or moderate difficulty in social or occupational functioning. He specifically stated that the claimant had a serious limitation but was not precluded in his ability to interact appropriately with the public, and that he could adjust and adapt reasonably well to stressors and pressures associated with at least a medium to lower work stress environment.

The November 30, 2004 statement completed by Adanta treating social worker Carole Ferree at Tr. 757-759 and other Adanta records contain the signatures of both the social worker and her supervising physician. The ALJ is correct that he is not required to treat the opinions of licensed clinical social workers with the deference that is due an "acceptable medical source" pursuant to 20 C.F.R. §416.913(a). However, these records are signed by Dr. Hyatt, a treating psychiatrist who would be an "acceptable medical source" and whose opinion may be entitled to controlling weight under the treating physician rule.

The ALJ's analysis of these records is consistent with application of the treating physician rule. That is, after discounting Ms. Ferree as merely a social worker, the ALJ nonetheless explained in detail why the disabling opinions of the Adanta sources were rejected – because they were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with other substantial evidence in the record. The ALJ had substantial bases in the record for rejecting the disabling opinions of the Adanta treaters, and for adopting other medical opinions contained in the record.

6

Residual functional capacity is an assessment of a claimant's remaining capacity for work once his or her limitations have been taken into account, Howard v. Commissioner, 276 F.3d 235, 239 (6th Cir. 2002). Residual functional capacity is what a claimant can still do on a sustained, regular, and continuing basis, Cohen v. Secretary of HHS, 964 F.2d 524 (1992). A claimant bears the burden of proof in establishing his or her residual functional capacity, Her v. Commissioner, 203 F.3d 388, 391-392 (6th Cir. 1999). While the determination of a claimant's RFC is "reserved to the Commissioner," it should be based upon the medical and non-medical evidence as a whole. 20 C.F.R. §416.927(e)(2). In claimant's case, the ALJ did consider the limitations contained in the records of Dr. Hyatt, Ms. Ferree and Dr. Dennis, but had legitimate reasons for not accepting those prescribed limitations. As noted above, there were numerous psychological opinions contained in the record, and the ALJ relied upon the medical evidence that was best supported in formulating the claimant's residual functional capacity. The claimant has failed to establish functional limitations greater than those set forth in the ALJ's determination.

3.    The ALJ improperly rejected the claimant's reported symptoms and complaints.

Finally, the claimant argues that his complaints were not adequately considered by the ALJ, which raises questions about the ALJ's credibility analysis. SSR 96-7p provides instruction on credibility evaluation as follows:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

20 C.F.R. § 416.929(c) describes the kinds of evidence, including the factors below, that the

adjudicator is to consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

1)      Your daily activities;

2)      The location, duration, frequency, and intensity of your pain or other symptoms;

3)      Precipitating and aggravating factors;

4)      The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

5)      Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

6)      Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

7)      Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

In his Decision, and consistent with both SSR 96-7p and the above-listed factors, the ALJ determined that the plaintiff's complaints were less than credible.  At Tr. 35, the ALJ reviews the claimant's complaints of difficulty sleeping, lack of energy, problems with concentration, isolation, forgetfulness, problems being around people, and inability to handle stress.  The ALJ acknowledges that the claimant's mental impairment could reasonably be expected to produce the alleged symptoms, but the claimant's statements about their effects are not entirely credible.  In support, the ALJ notes the claimant's statements to Dr. Edwards about his enjoyment of fishing and playing video games.  Dr. Edwards assigned a GAF of 70, signifying some mild symptoms, but noted that

8

generally, claimant was functioning pretty well with some meaningful interpersonal relationships. Dr. Edwards concluded he was capable of working without significant psychiatric symptoms. Psychological consultants similarly concluded he was capable of working, noting his ability to understand and recall material; maintain mental effort to complete tasks; function in an object-focused setting; and handle routine situations.  Similarly, Dr. Maryman conducted an assessment of claimant and noted he was alert and showed no signs of any emotional distress, completed the examination process quite well, conducted himself appropriately.  Dr. Maryman assigned a GAF of 58 indicating moderate symptoms, but which did not preclude the ability to work.  Claimant noted that he was not taking medication, nor was he actively in mental health treatment.  His activities included doing laundry, grocery shopping, playing video games and visiting his mother.  In light of these facts, as analyzed by the ALJ, the Court concludes that the ALJ committed no error in rejecting claimant's credibility.

An ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other, Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990).  In other words, discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence, Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997). While plaintiff disagrees with the ALJ's rejection of his credibility, it is nonetheless clear that the ALJ stated sufficient reasons for his credibility determinations.  The Court declines to disturb the ALJ's credibility findings.

The claimant finds fault with the ALJ's RFC findings as presented in the controlling hypothetical to the vocational expert at the final hearing in this matter.  He claims that his difficulty

in dealing with co-workers and supervisors is insufficiently accounted for in the controlling hypothetical. In support, he relies upon his subjective complaints of difficulties in interacting with others, as well as the records from Adanta which support disabling mental impairments. For the reasons set forth above, both the claimant's complaints and the disabling opinions from Adanta were properly rejected by the ALJ.

<u>CONCLUSION</u>

The ALJ's decision is supported by substantial evidence and will not be disturbed by this Court. A Judgment in conformity with this Memorandum Opinion has this day entered.